United States District Court
Southern District of Texas

**ENTERED**

August 22, 2022

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LINDSAYCA USA, INC., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-cv-00037 |
| | § | |
| PETROLEOS DE VENEZUELA, S.A., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Plaintiff's Motion for Default Judgment Pursuant to Article 15 of the Hague Convention. Dkt. 38. After reviewing the record and applicable law, I recommend that Plaintiff's motion be **GRANTED** and that a default judgment be entered against Defendants Petroleos de Venezuela, S.A. ("PDVSA") and Bariven, S.A. ("Bariven").

## BACKGROUND

In January 2021, Plaintiff Lindsayca USA, Inc. ("Lindsayca") filed this lawsuit against PDVSA, Bariven, and PDVSA Services, Inc. ("PDVSA Services"), asserting causes of action for breach of contract and quantum meruit. Lindsayca is a Texas corporation that supplies goods and services around the world to the oil, gas, petrochemical, and power industries. PDVSA and Bariven are entities existing under the laws of Venezuela, both wholly owned by the Venezuelan government. PDVSA Services is a Delaware corporation.

In its First Amended Complaint for Damages, the live pleading in this case, Lindsayca alleges that in 2013 and 2014, PDVSA, through its international

purchasing agents, Bariven and PDVSA Services,[1] placed nine separate purchase orders reflected in six separate invoices. Although Lindsayca allegedly delivered the oilfield equipment and services ordered by PDVSA in a timely fashion, no payments have been made to date on the outstanding invoices. Lindsayca contends that a total principal amount of $7,794,454.03, plus interest, remains due and owing.

Because PDVSA and Bariven are located in Venezuela, Lindsayca hired a process server to effectuate service abroad. The process server undertook efforts to properly serve PDVSA and Bariven under the Hague Convention. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361. To begin, the process server obtained copies of various court documents—including the Original Complaint for Damages (with exhibits), summonses, Order for Conference and Disclosure of Interested Parties, and Joint Discovery/Case Management Plan—and had those documents translated into Spanish. On April 10, 2021, those documents (in both English and Spanish) were transmitted by delivery to Venezuela's Central Authority to be served on PDVSA and Bariven.

After Lindsayca filed its First Amended Complaint for Damages, the process server took steps to ensure that the new pleading was properly served in accordance with the Hague Convention. These efforts included having the First Amended Complaint for Damages (with attachment), summonses, Order for Conference and Disclosure of Interested Parties, and Joint Discovery/Case Management Plan translated into Spanish. On October 6, 2021, the process server forwarded these documents (in both English and Spanish) to Venezuela's Central Authority for service on PDVSA and Bariven.

---

[1] On June 27, 2022, Lindsayca asked this Court to voluntarily dismiss its claims against PDVSA Services. *See* Dkt. 40. The claims were dismissed without prejudice that same day. *See* Dkt. 41.

According to Lindsayca's process server, she has made several requests to the Central Authority for Venezuela for a status update on service, but no response has been received to date. In a declaration submitted with the Motion for Default Judgment, the process server noted that "Venezuela is no longer complying with its obligations to the Hague Service Convention . . . . Given that all attempts in the past 3 years to serve via the Hague Service Convention in Venezuela have resulted in no response after a service request is submitted, it is reasonable to assume that [service on PDVSA and Bariven] will not be returned in a reasonable time." Dkt. 38 at 11–12.

Lindsayca has now moved for entry of a default judgment against PDVSA and Bariven under Article 15 of the Hague Convention.

## DISCUSSION

Federal Rule of Civil Procedure 55 governs the two steps in the default judgment process: (1) the entry of default by the clerk; and (2) the subsequent entry of a default judgment. *See* FED. R. CIV. P. 55. "An entry of default is what the clerk enters when the default is established by affidavit or otherwise." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (emphasis omitted) (citing FED. R. CIV. P. 55(a)). Once a default has been entered, and upon a party's motion, a court may enter "a judgment based on such default. This is a default judgment." *Id.* (emphasis omitted). *See* FED. R. CIV. P. 55(b).

### A.   ENTRY OF DEFAULT

To determine whether Lindsayca is entitled to an entry of default, I must ascertain whether Lindsayca properly effected service on PDVSA and Bariven. That inquiry requires me to explore the contours of a federal statute and a multilateral treaty.

### 1.   Foreign Sovereign Immunities Act

Because Defendants are wholly owned by the Venezuelan Government, they are each considered an "agency or instrumentality" of Venezuela and, therefore, a "foreign state" within the meaning of the Foreign Sovereign Immunities Act

3

("FSIA").[2] 28 U.S.C. § 1603(a), (b). The FSIA is the sole source of jurisdiction over a foreign state in our courts. *See Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 435–38 (1989). Section 1608(b) of the FSIA also "provides the exclusive means by which service of process may be effected on an agency or instrumentality of a foreign state." *Matter of Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 299 (S.D. Tex. 1997). Section 1608(b) provides that service shall be made upon an instrumentality of a foreign state in one of three ways:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or *in accordance with an applicable international convention* on service of judicial documents; or

> (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

>> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

>> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

---

[2] The FSIA defines a "foreign state" as "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). The FSIA further defines an "agency or instrumentality of a foreign state" as "any entity . . . which is a separate legal person, corporate or otherwise, and . . . which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and . . . which is [not] a citizen of a State of the United States." *Id.* § 1603(b).

> (C) as directed by order of the court consistent with the law of
> the place where service is to be made.

28 U.S.C. § 1608(b) (emphasis added). The methods of service in § 1608(b) are listed in order of preference, "such that a plaintiff must attempt the methods of service in the order they are laid out in the statute." *Magness v. Russian Fed'n*, 247 F.3d 609, 613 (5th Cir. 2001).

Section 1608(b)(1) is inapplicable here because there is no "special arrangement for service" between the parties. 28 U.S.C. § 1608(b)(1). The next available means of service is "by delivery of a copy of the summons and complaint . . . in accordance with an applicable international convention." *Id.* § 1608(b)(2). The United States and Venezuela are both signatories to one such convention: the Hague Convention. *See A.T.N. Indus., Inc. v. Gross*, No. 4:14-CV-02743, 2016 WL 362309, at *4 (S.D. Tex. Jan. 29, 2016). I thus need to look at how service can be accomplished in accordance with the Hague Convention.

### 2. The Hague Convention

The Hague Convention "is a multilateral treaty . . . . intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). It serves as "the exclusive means of valid service" for entities in countries that are signatories to it. *Id.* at 706.

One district court perfectly summed up the process outlined in the Hague Convention for the service of process abroad:

> The Hague Service Convention requires each signatory state to establish a central authority to receive requests for service of documents from other countries. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. The central authority then returns a certificate of service that conforms to a specified model prescribed in the Convention. The certificate of service states the method, the place and date of service, and the person

to whom the document was delivered. The Hague Convention preempts all state and federal service rules in those countries that signed the treaty.

*Eddo v. Xuzhou Senya Plywood Co., Ltd.*, No. C08-5429RJB, 2009 WL 10676381, at *1 (W.D. Wash. Jan. 30, 2009) (cleaned up).

The evidence before me conclusively establishes that the Venezuelan Central Authority did not, as required by the Hague Convention, return a certificate of service confirming the service of the documents upon PDVSA and Bariven. *See* Hague Convention, art. 6. When no certificate of service or delivery has been received, Article 15 of the Hague Convention provides that each contracting state shall be free to declare that a court can enter a default judgment so long as three conditions are met:[3]

> (a) the document was transmitted by one of the methods provided for in [the Hague] Convention,

> (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document, [and]

> (c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

*Id.* art. 15, ¶ 2.

Each of these conditions is satisfied here. First, Lindsayca's process server "transmitted [service] by one of the methods provided for in [the Hague] Convention" by forwarding the requisite documents to the Venezuelan Central Authority, the entity designated under the Hague Convention to effectuate service

---

[3] The United States is one of the signatory countries that has declared that a judge may "give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled." *Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*, No. 19-23113-CIV, 2022 WL 820376, at *5 (S.D. Fla. Mar. 1, 2022) (quotation omitted).

of process in Venezuela.[4] *Id.* art. 15(a), ¶ 2. Second, a period exceeding six months has passed since delivery of the First Amended Complaint and associated documents to the Venezuelan Central Authority on October 6, 2021. *See id.* art. 15(b), ¶ 2. Third, no certificate of service has been received from the Venezuelan Central Authority despite Lindsayca making "every reasonable effort" to obtain it. *Id.* art. 15(c), ¶ 2. Indeed, Lindsayca's process server made several requests to the Venezuelan Central Authority seeking an update on the status of service on PDVSA and Bariven but received no response. Given that Venezuela "has not returned any status requests or certificates of service in more than 2 years," I am not sure what else Lindsayca could do to obtain the certificate of service from the Venezuelan Central Authority. Dkt. 38 at 12.

***

Because Lindsayca has met the requirements of Article 15, I find that entry of default against PDVSA and Bariven is appropriate.

## B.   ENTRY OF A DEFAULT JUDGMENT

I now must determine whether a default judgment should be entered against PDVSA and Bariven. Even when a defendant has been properly served and is technically in default, a plaintiff is not entitled to a default judgment as a matter of right. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). That's because "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and

---

[4] I am aware that the D.C. Circuit recently held that mere delivery of the required documents to Venezuela's Central Authority is insufficient to effectuate service of process under the Hague Convention. *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, 23 F.4th 1036, 1041–42 (D.C. Cir. 2022). In that case, which is not binding on this Court, the D.C. Circuit held that a plaintiff could not bypass available methods of service by simply delivering the documents to the Central Authority. *See id.* I respectfully disagree with the D.C. Circuit's holding. In my view, when, as here, a foreign defendant is the state, service of papers on the Central Authority, an arm of the state, equates to service on the state itself. The Fifth Circuit has endorsed my position, holding that a plaintiff properly served Mexico under the Hague Convention upon delivering papers to Mexico's Central Authority, given it was "certainly not [plaintiff's] fault that the Mexican authorities did not return a formal Certificate." *Box v. Dall. Mexican Consulate Gen.*, 487 F. App'x 880, 886 (5th Cir. 2012) (cleaned up).

resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted).

To determine whether to enter a default judgment, the Fifth Circuit requires district courts to examine: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the Court would consider itself obligated to set aside a default on the defendant's motion. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Applying these six factors here, I conclude that a default judgment against PDVSA and Bariven is appropriate. First, there are no material issues of fact. Because PDVSA and Bariven have failed to answer the lawsuit, they are deemed to have admitted the allegations against them set forth in the Complaint. *See* FED. R. CIV. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."). Second, there is no prejudice against PDVSA and Bariven. As discussed, they were properly served under the Hague Convention and failed to respond to the lawsuit. Third, the grounds for default are clearly established. Fourth, I am unaware of any good-faith mistake or excusable neglect that militates against default. Fifth, I do not find a default judgment to be harsh when PDVSA and Bariven have not even bothered to respond to the lawsuit. Sixth, I am aware of no facts that would cause me to set aside the default judgment should it be challenged at a later date.

Although PDVSA and Bariven are deemed to have admitted the allegations in the First Amended Complaint for Damages as a result of their default, I must still review the pleadings to determine whether there is "a sufficient basis in the pleadings for the judgment [to be] entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). "When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those

pleaded facts state a claim upon which relief may be granted." *Shaw v. Galo Equip. & Constr., LLC*, No. 5-19-CV-00859-DAE, 2020 WL 3118928, at *2 (W.D. Tex. June 12, 2020).

Lindsayca is entitled to a default judgment on its breach-of-contract claim because the facts alleged in the First Amended Complaint for Damages state a claim upon which relief may be granted.[5] Under Texas law, there are four essential elements to a breach-of-contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (cleaned up).

The allegations set out in the operative complaint state a breach-of-contract claim upon which relief may be granted. Specifically, the First Amended Complaint for Damages alleges that: (1) Lindsayca entered into valid and binding purchase orders with PDVSA and Bariven, enforceable in accordance with their terms; (2) Lindsayca performed its contractual obligations by timely providing oilfield equipment and services to PDVSA and Bariven; (3) PDVSA and Bariven have failed to pay for the oilfield equipment and services as required by the parties' agreements; and (4) Lindsayca has sustained damages as a result of PDVSA's and Bariven's breach of contract. *See* Dkt. 29 at 8–11. Given these well-pleaded factual allegations, a default judgment is entirely appropriate.

---

[5] Lindsayca also alleges a quantum meruit cause of action. Quantum meruit is an equitable theory of recovery based on an implied agreement "to pay for beneficial services rendered and knowingly accepted." *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (quotation omitted). Texas law provides that "[r]ecovery on an express contract and on quantum meruit are inconsistent." *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). "Where there exists a valid express contract covering the subject matter, there can be no implied contract." *Id.* For this reason, I conclude that Lindsayca is not entitled to a default judgment on its quantum meruit claim.

## C.   AMOUNT OF DAMAGES

Having found that a default judgment should be entered in favor of Lindsayca and against PDVSA and Bariven, I must next determine the appropriate amount of damages. *See Pope v. United States*, 323 U.S. 1, 12 (1944) (after granting default judgment, it is the district court's duty "to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly").

A district court possesses "wide latitude" in determining whether an evidentiary hearing should be conducted when awarding damages after a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). When the amount sought can be "computed with certainty by reference to the pleadings and supporting documents," an evidentiary hearing would serve no useful purpose. *Id.* at 311 (quotation omitted). That is precisely the situation here. Because I can calculate the amount of damages with certainty by reviewing the pleadings and supporting documents on file, there is simply no need to "jump through the hoop of an evidentiary hearing." *Id.*

The First Amended Complaint for Damages specifically alleges: "The Purchase Orders created duties between all the parties. Lindsayca agreed to sell the equipment and services to Defendants. In exchange for the products, Defendants had a duty to pay Lindsayca a total sum of **$7,794,454.03** dollars." Dkt. 29 at 11. The lawsuit also alleges that PDVSA and Bariven "have made no payments . . . and all balances reflected therein remain past due and outstanding." *Id.* By defaulting, PDVSA and Bariven admitted these well-pleaded allegations of fact. These admitted allegations are sufficient to allow recovery of $7,794,454.03 in breach-of-contract damages upon default.

## CONCLUSION

For the reasons explained above, I recommend that Plaintiff's Motion for Entry of Default Judgment be **GRANTED** and that (1) the clerk enter a default, and (2) the District Judge enter a default judgment in favor of Lindsayca and against PDVSA and Bariven, jointly and severally, in the amount of $7,794,454.03.

Post-judgment interest should accrue at the statutory rate on the date judgment is entered.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 22nd day of August, 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE